# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00525-CV

Mariana Teixeira Naves, Appellant

v.

National Western Life Insurance Company, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-GN-07-004494, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

Appellant Mariana Teixeira Naves obtained a default judgment in Brazil against appellee National Western Life Insurance Company. Naves sought to domesticate the Brazilian judgment in Travis County district court, and National Western filed a motion for nonrecognition of the foreign judgment. The district court granted National Western's motion for nonrecognition. Naves appeals. We conclude that the Brazilian court did not obtain personal jurisdiction over National Western, and that the district court did not abuse its discretion by declining to conduct an evidentiary hearing. We affirm the judgment of the district court.

### Factual and Procedural Background

The underlying dispute in this case concerns a life insurance policy issued by National Western in the face amount of $400,000. The policy was obtained through Ricardo Oliveira Tarantello, an "executive general agent" of National Western in Brazil. The

insured, Antonio Manoel Rodriguez, named Naves as the beneficiary. Two months after National Western issued the policy and during the policy's contestability period, Rodriguez was shot and killed in Brazil. National Western then rescinded the policy and returned payment based on its determination that Rodriguez had failed to disclose his history of diabetes.

Naves filed suit against National Western in a Brazilian civil court to recover payments she deemed were due under the insurance policy. Naves attempted to serve National Western by serving Tarantello. National Western did not appear in the Brazilian lawsuit. Naves obtained a default judgment against National Western in the Brazilian court on August 23, 2005, for the proceeds of the insurance policy and other costs and fees.

Naves sought to domesticate the foreign judgment in Travis County district court,[1] in accordance with the Uniform Foreign Country Money-Judgment Recognition Act (the "Act"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001-.008 (West 2008). National Western filed a motion for nonrecognition of the judgment, based in part on the Brazilian court's lack of personal jurisdiction over National Western. On July 17, 2008, the district court granted National Western's motion and ordered, pursuant to the Act, that the Brazilian default judgment be of no force and effect in any Texas court and not be entitled to full faith and credit. Naves appeals.

---

[1] Naves initially filed a notice of domestication in Harris County district court, but the case was transferred to Travis County, the county in which National Western's principal place of business is located.

2

*Motion for Nonrecognition*

A foreign country judgment is generally enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit. *See id.* § 36.004. However, the party against whom recognition of a foreign country judgment is sought may contest recognition of the judgment by timely filing with the court a motion for nonrecognition of the judgment. *See id.* § 36.0044(a). In the event such a motion is timely filed, the court may refuse recognition of the foreign country judgment if the evidence establishes grounds for nonrecognition specified in section 36.005 of the Act. *See id.* § 36.0044(g).

In her first four points on appeal, Naves challenges the district court's grant of National Western's motion for nonrecognition. We review the grant of a motion for nonrecognition de novo. *See Courage Co. v. ChemShare Corp.*, 93 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The party seeking to avoid recognition of the foreign judgment has the burden of proving a ground for nonrecognition. *See id.* National Western based its motion for nonrecognition on the Brazilian court not having personal jurisdiction over National Western. Under section 36.005 of the Act, if the foreign court lacks personal jurisdiction over a defendant, a Texas court must refuse recognition of the foreign country judgment against that defendant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.005(a)(2); *Courage Co.*, 93 S.W.3d at 330.

The parties agree that Brazilian law requires valid service of process on a defendant for a Brazilian court to obtain personal jurisdiction over that defendant. Naves attempted to serve National Western with process by serving Tarantello, the insurance agent in Brazil from whom Rodriguez obtained the insurance policy. According to the Brazilian Code of Civil Procedure, in the

3

translation provided to the trial court by National Western, a foreign corporation may be served with process by serving "the manager, representative or administrator of its branch or agency, open or incorporated in Brazil."[2] National Western contends that service was not accomplished in accordance with Brazilian law because National Western does not have any sort of branch, agency, or office in Brazil.

In support of its motion for nonrecognition, National Western included the affidavit of James P. Payne, senior vice president-secretary of National Western, and attached to the affidavit is the "Executive General Agent Contract" between National Western and Tarantello. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(b) ("The party filing the motion for nonrecognition shall

---

[2] In an affidavit attached to National Western's motion for nonrecognition, Antonio Gidi, assistant professor of law at the University of Houston Law Center, provided the following translation from Portuguese of the applicable Brazilian law:

> **CPC, Art. 12, VI**: Legal persons (corporations) will be represented in court, either as plaintiff or defendant, by the persons designated in their bylaws, or in the absence of designation, by their directors.
> **CPC, Art. 12, VIII**: Foreign legal persons (foreign corporations) will be represented in court, either as plaintiff or defendant, by the manager, representative or administrator of its branch or agency, open or incorporated in Brazil.

Naves has not challenged Gidi's expert qualifications as a translator. Naves filed two English translations of the Brazilian court's default judgment. The first translates the relevant portion of subsection VIII as "the manager, representative or administrator of the branch office, agency or field office opened or established in Brazil." The second—provided by Naves after failing to obtain an affidavit of a qualified translator with regard to the first, *see* Tex. R. Evid. 1009(a)—translates the relevant portion as "the manager, agent or officer of their branch office, agency or representation office opened or established in Brazil." While the translations differ to some extent, the differences do not impact our analysis.

4

include with the motion all supporting affidavits, briefs, and other documentation.").[3] Payne's affidavit includes the following paragraphs:

4. [National Western] does not do business in Brazil and it is not registered to do business in Brazil. [National Western] has no offices in Brazil. [National Western] has no branch office, agency, or field office in Brazil. [National Western] has no employees, agents, or representatives in Brazil.

5. [National Western] has entered into Executive General Agent Contracts with individuals in Brazil. These agreements create an independent contractor relationship between [National Western] and the General Executive Agent. The agreement grants the General Executive Agent, as an independent contractor, the right to procure applications for insurance, including life insurance, and annuities from citizens of Brazil. These independent contractors submit such applications to [National Western] on behalf of their clients.

Naves objected to these paragraphs as "conclusory." The district court did not rule on the objection, and Naves reasserts her objection on appeal. While the notion that an affidavit is subject to objection on the basis that it is "conclusory" is suspect, we conclude that Payne's affidavit does not state inadmissible legal conclusions that will not support the trial court's judgment. Payne's affidavit consists of sworn statements of fact that would be admissible to support the conclusion that National Western does not have a "branch," "agency," or "office" in Brazil. These include the statements of fact that National Western does not do business in Brazil, is not registered to do business in Brazil, has no offices in Brazil, and has no employees or agents in Brazil. The attached agency contract is consistent with these statements. According to Payne's affidavit,

---

[3] National Western subsequently moved for leave to file the affidavit of Ricardo Tarantello. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(f) (West 2008) (court may permit submission of additional materials). Naves objected to the untimely filing, and the district court did not rule on the motion. Neither party has argued on appeal that it was error not to grant, or otherwise rule on, the motion for leave.

National Western offers insurance in Brazil by entering into agency contracts with independent contractors. The attached contract designates Tarantello as "an independent contractor and nothing in this contract shall be construed to create the relationship of principal and agent or master and servant or employer and employee," appoints him solely "to procure applications for insurance and annuity contracts as are issued by [National Western]," and does not prohibit him from procuring applications for other insurance companies.

Naves points to evidence in the record that Tarantello is an "agent" of National Western. For example, Tarantello operates under a contract entitled "Executive General Agent Contract" and holds the position of "Executive General Agent." Naves also produced testimony from Scott Arendale, National Western's senior vice president of international marketing,[4] to the effect that Tarantello was an "agent" of National Western. However, Tarantello's being an agent does not, by itself, evidence a National Western branch, agency, or office as required by Brazilian law. The agency contract does not identify Tarantello as a representative of a branch, agency, or office. Moreover, Arendale further testified that Tarantello was not an exclusive agent to National Western and, in fact, represented other insurance companies in addition to National Western. Thus, neither Tarantello's contract nor Arendale's testimony controverts Payne's assertion that National Western has no offices in Brazil. Absent a branch, agency, or office opened

---

[4] Arendale's testimony was given in a lawsuit in Harris County. In that lawsuit, the beneficiary of a separate life insurance policy issued for Rodriguez by National Western sued National Western for failure to pay proceeds under the policy. We note that there is nothing in the record to indicate that service of process, personal jurisdiction, or the existence of a National Western branch, agency, or office in Brazil was at issue in that suit.

6

or incorporated by National Western in Brazil, it is irrelevant under the applicable Brazil law whether Tarantello was an agent, or otherwise a "manager, representative or administrator."[5]

Naves contends that the provision in the agency contract authorizing National Western to assign additional agents to Tarantello and approve agents appointed by Tarantello creates a branch, agency, or office. However, even if Naves were correct that the assignment or appointment of an agent to Tarantello would, by itself, be sufficient to create a branch, agency, or office under Brazil law—a proposition for which Naves provides no support—there is no evidence that any such agents were, in fact, assigned or approved by National Western. In sum, National Western produced sufficient evidence to establish the lack of a branch, agency, or office in Brazil, and Naves produced no evidence to the contrary.[6]

Naves appears to contend that Tarantello's being an agent generally is sufficient to make him an agent specifically for purposes of service of process. However, the record evidence demonstrates that while Tarantello does have some agency authority, such authority does not include

---

[5] Naves contends that we should follow the Brazilian court's analysis concerning personal jurisdiction since that court is "the best interpreter of Brazilian law." However, we note that the Brazilian court appears to have based its personal jurisdiction solely on documents identifying Tarantello as National Western's "agent," without addressing whether Tarantello was affiliated with a National Western branch, agency, or office opened or incorporated in Brazil.

[6] After the district court issued its order granting National Western's motion for nonrecognition, Naves filed a motion for reconsideration to which additional documents were attached. The district court did not rule on the motion for reconsideration, and it was deemed overruled as a result. *See* Tex. R. Civ. P. 329b(c). The attached documents were not part of the record before the court when it rendered its judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(c) ("A party opposing the motion must file any response, including supporting affidavits, briefs, and other documentation, not later than the 20th day after the date of service on that party of a copy of the motion for nonrecognition."). A court may permit the submission of additional documents. *See id.* § 36.0044(f). However, the district court did not abuse its discretion in not doing so, given that the documents were not filed until after judgment was entered, and Naves provided no reason in her motion for reconsideration why they were not—or could not have been—filed earlier.

7

receipt of service of process on National Western's behalf. *See Gaines v. Kelly*, 235 S.W.3d 179, 184-85 (Tex. 2007) ("The relevant issue then is not merely the existence of an agency relationship, but rather the scope of that agency."). The agency contract provides Tarantello with authority to procure applications for insurance on National Western's behalf, but does not provide any authority to receive service of process on National Western's behalf. Moreover, the contract expressly states that Tarantello cannot institute legal proceedings on National Western's behalf "without [its] written approval," and that if legal action is brought against National Western because of Tarantello's acts, it "may require" him to defend such action. Thus, the scope of Tarantello's agency, in accordance with the contract, did not encompass any activities related to legal proceedings absent National Western's consent or demand, neither of which had been provided here.

Next, Naves attempts to rely on the provision of the Brazilian Code of Civil Procedure that provides—according to the only English translation in the record—that corporations are represented in court "by the persons designated in their bylaws, or in the absence of designation, by their directors." Naves contends that National Western failed to introduce any evidence that Tarantello was not so designated in its bylaws or that he was not a director. Naves, at the district court, did not refer to this provision of the Brazilian code or otherwise raise this argument. *See* Tex. R. App. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion . . . ."). Furthermore, even if we were to consider this additional legal basis for service of process, we would hold that the Brazilian court did not thereby obtain personal jurisdiction over National Western. Payne averred in his affidavit that "Tarantello was not and has

8

never been authorized to accept service of process on behalf of [National Western]." Payne's statement is consistent with the agency contract, which identifies Tarantello as an independent contractor, with authority existing "only as expressly stated in this contract." The record contains sufficient evidence, therefore, that Tarantello neither was National Western's director nor was designated in the bylaws to accept process on National Western's behalf.

Finally, Naves attempts to rely on section 36.006(b) of the Act, which provides that a Texas court may recognize "other bases" of personal jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.006(b). Naves argues that we should follow New York courts in relying on such statutory authority to hold that a state should "recognize a foreign judgment predicated on any jurisdictional basis it recognizes in its internal law." *See Porisini v. Petricca*, 456 N.Y.S.2d 888, 889-90 (N.Y. App. Div. 1982). To the extent Naves is arguing that the district court below abused its discretion by declining to consider an alternative basis for jurisdiction, we decline to so hold, given that prior to entry of the district court's judgment Naves did not present any arguments to the district court relating to section 36.006(b) of the Act or New York case law. To the extent Naves is arguing that regardless of the proceedings before the district court this Court should recognize another basis for jurisdiction, we decline to do so. There is no Texas authority for the proposition that section 36.006(b) should be applied to recognize an independent basis for jurisdiction. Moreover, based on the translations in the record, Brazilian law already provides for methods by which Naves could have properly served National Western with process even if it had no branch, agency, or office opened or incorporated in Brazil.

9

We conclude the evidence demonstrates that, under Brazilian law as raised and presented by the parties, the Brazilian court did not obtain personal jurisdiction over National Western. National Western's motion for nonrecognition was, therefore, properly granted. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(g), .005(a)(2).[7]

***Evidentiary Hearing***

In her remaining point on appeal, Naves contends that the district court abused its discretion by refusing to ensure that the July 14, 2008 hearing on National Western's motion for nonrecognition was an evidentiary hearing. Both parties had included with their motions and responses "supporting affidavits, briefs, and other documentation." *See id.* § 36.0044(b), (c). The Act also provides that the "party filing a motion for nonrecognition or responding to the motion may request an evidentiary hearing that the court may allow in its discretion." *Id.* § 36.0044(e). However, neither party requested an evidentiary hearing prior to the hearing's commencement. At the hearing, Naves attempted to submit new evidence and argued that Payne's absence at the hearing rendered his affidavit hearsay. When the court inquired whether Naves had communicated in her filings or to National Western that she would request an evidentiary hearing, Naves abandoned her efforts: "No, I don't want an evidentiary hearing. I don't think we need one." Given Naves's failure to request an evidentiary hearing prior to the hearing's commencement, and her concession at the

---

[7] Having concluded that the motion for nonrecognition was properly granted for lack of personal jurisdiction in accordance with section 36.005(a)(2) of the Act, we do not address National Western's alternative argument that its motion was properly granted based on lack of reciprocity, which is a discretionary ground for nonrecognition of foreign judgment under section 36.005(b)(7) of the Act. *See id.* § 36.005(b)(7) (West 2008).

10

hearing that it could proceed without additional evidence being introduced, we hold that the district court did not abuse its discretion in not conducting an evidentiary hearing. *See id.*

### *Conclusion*

Having overruled each of Naves's points on appeal, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;
    Concurring Opinion by Justice Patterson

Affirmed

Filed:   September 10, 2009